UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

MATTHEW EDWARD ALEXANDER          CIVIL ACTION NO. 15-2659

VERSUS                            JUDGE ROBERT G. JAMES

VIVIAN SINGLETARY                 MAG. JUDGE KAREN L. HAYES

RULING

Plaintiff Matthew Alexander ("Alexander") acting *pro se*, brought this defamation suit against Defendant Vivian Singletary ("Singletary") based on a statement Singletary made during the course of an investigation into Alexander as a potential arson suspect.

Pending before the Court is Singletary's Motion for Summary Judgment/Special Motion to Strike Under Louisiana Code of Civil Procedure Article 971 ("Motion for Summary Judgment/Motion to Strike") [Doc. No. 7]. For the following reasons, Singletary's Motion for Summary Judgment/Motion to Strike is GRANTED. Alexander's pending Motion for Summary Judgment [Doc. No. 32] is DENIED AS MOOT.

I.       FACTS AND PROCEDURAL HISTORY

This case concerns supposed defamatory statements published against Alexander during a criminal investigation. The factual record is not very well developed. Singletary was an employee of Ray Nixon & Associates. A fire occurred at that office on or about August 7, 2014. The fire was believed to be an arson, and Alexander was a suspect in that arson, although it is unclear what connection he had with Ray Nixon & Associates.

Assistant District Attorney Geary Aycock ("Aycock") interviewed Singletary around the first

week of September 2015 about the suspected arson. Aycock asked her whether she had had communications with Alexander. This first interview is not in the record.

Singletary was interviewed a second time and stated that Alexander had called Nixon & Associates multiple times in the past, but she was unaware of the frequency of the calls because normally Nixon would answer the phone.[1] However, Singletary acknowledged that she had talked to Alexander herself multiple times.  According to Singletary, shortly before the fire, Alexander called the office and asked for Nixon, but he was out. Alexander was  allegedly  rude to Singletary and stated that "you are going down, too."[2] Singletary informed Aycock of this statement. Alexander vehemently denies making such a statement.

Alexander brought this suit on November 9, 2015, alleging Singletary's statement to Aycock was defamatory *per se*. On March 21, 2016, Singletary filed a Motion for Summary Judgment/Special Motion to Strike [Doc. No. 7]. The parties filed various response memoranda.

On July 13, 2016, Alexander filed his own motion for summary judgment [Doc. No. 32], mostly recycling the same arguments he makes in response to Singletary's motion for summary judgment, and, not offering new arguments that would change the outcome of this motion.

---

[1]Singletary claims that she would have no way of knowing how many times Alexander called unless she checked the caller ID.

[2]In his Complaint, Alexander also asserts that Singletary defamed him by "lying to ADA Aycock about her whereabouts on the day of the fire and misleading him as to what transpired that morning..." *See* [Doc. No. 1]. In his memorandum in opposition, he notes the following statements Singletary made during the investigation: (1) "everyone was standing around discussing what had happened"; (2) "all the trails to the office were blocked by emergency vehicles so I had to stop and wait to see what my next step was"; (3) "Ray was talking with someone else at the time [that Singletary arrived on the scene]." [Doc. No. 11].

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard and Louisiana Civil Code Article 971 ("Article 971") Motion to Strike

Singletary couches her motion as one for summary judgment, as well as a motion to strike under Article 971. The two motions are technically distinct. However, the Fifth Circuit, as well as the Louisiana First, Second, and Third Circuit Courts of Appeal have all noted that the special motion to strike essentially entails a governing standard akin to that of a motion for summary judgment. *See Lozovyy v. Kurtz*, 813 F.3d 576, 583 (5th Cir. 2015) (citing *Hakim v. O' Donnell*, 49,140 (La.App. 2 Cir. 6/25/14), 14 So.3d 1179,  1190 n.5; *Hebert v. La. Licensed Prof'l Vocational Rehab. Counselors*, 2007-610 (La. App. 3 Cir. 1/23/08); 974 So.3d 1002, 1010; *Lamz v. Wells*, 2005-1497 (La. App. 1 Cir. 9/6/06), 938 So.2d 792, 796). Thus, in practice, the motions do not call for separate analyses.

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that

a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'").

Louisiana's special motion to strike was promulgated out of concern that defamation suits were burdening free speech rights. *See Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 169 (5th Cir. 2009). Accordingly, "Article 971 was enacted by the legislature as a procedural device to be used early in legal proceedings to screen meritless claims pursued to chill one's constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press." *Lee v. Pennington*, 2002-0381 (La. App. 4 Cir. 10/16/02), 830 So.2d 1037, 1041. In relevant part, Article 971 provides:

> [A] cause of action against a person arising from any act of that person in

4

furtherance of that person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.[3]

To succeed on a special motion to strike, a defendant must first show that Article 971 covers the defamation claim at issue. Article 971 will cover the defamation claim if it "arises from an act by [the defendant] in furtherance of the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." *Starr v. Boudreaux*, 2007-0652 (La. App. 1 Cir. 12/21/07), 978 So.2d 384, 388-89. If the defendant meets his burden at step one, "the burden then shifts to the plaintiff to demonstrate a probability of success on his claim." *Id*. at 389.

In this case, Singletary can meet her burden with respect to the first inquiry. The article defines an "act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" as, in relevant part:

(b)     any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.

The investigation into Alexander as an arson suspect was certainly an issue under consideration by an official body authorized by law, namely, the District Attorney's office. Alexander does not argue otherwise. Accordingly, the burden shifts to Alexander to prove a likelihood of success on the merits of his defamation claim.

To establish a likelihood of success on the merits so as to overcome a special motion to

---

[3]The Fifth Circuit has applied Article 971 in federal court. *See Henry*, 566 F.3d at 181. Therefore, and because neither party addresses the issue, the Court assumes Article 971 applies in this diversity action.

strike, Alexander must "produce evidence of sufficient quality and quantity to demonstrate that he

will be able to meet his burden of proof at trial." This has been described as a "difficult burden."

*Baxter v. Scott*, 37,092 (La. App. 2 Cir. 5/16/03), 847 So.2d 225, 235. The burden is justified,

however, given the intimate relationship and tension between defamation claims and the right to free

speech under the First Amendment.

  **B.**    **Defamation**

   ***1.***    ***Prima Facie Case***

   Defamation is a tort by which a person's reputation or good name is sullied. *See Hakim v.*

*O' Donnell*, 49,140 (La. App. 2 Cir. 6/25/14), 14 So.3d 1179, 1185-86 (citation omitted). A

successful defamation plaintiff must demonstrate the following by a preponderance of the evidence:

(1) a false or defamatory statement concerning another; (2) an unprivileged communication to a third

party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Id*. at

1186. (citing *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So.2d 669, 674;

*Costello v. Hardy*, 2003-1146 (La. 1/21/04); 864 So.2d 129; *Trentecosta v. Beck*, 1996-2388 (La.

10/21/97), 703 So.2d 552).

   "Defamatory words are, by definition, words which tend to harm the reputation of another

so as to lower the person in the estimation of the community, to deter others from associating or

dealing with the person, or otherwise expose a person to contempt or ridicule." *Costello*, 864 So.2d

at 140 (citing *Fitzgerald v. Tucker*, 98-2313, p. 10 (La. 6/29/99), 737 So.2d 706, 716; *Trentecosta*,

703 So.2d at 559). Louisiana law   recognizes two kinds of defamatory words. Words which

"expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to

injure one's personal or professional reputation" are said to be defamatory *per se. See Kennedy*, 935

6

So.2d at 675 (citing *Costello*, 864 So.2d at 140; *Cangelosi v. Schwegmann Brothers Giant Supermarkets*, 390 So.2d 196, 198 (La. 1980)). When words are defamatory *per se*, malice and falsity are presumed; however, a defendant can still overcome that presumption. *Id.* (citation omitted). The element of injury may also be presumed. *Id.*

Words that are defamatory *per se* must be contrasted with those capable of supporting a defamatory meaning depending on the "extrinsic facts or surrounding circumstances." *Id.* (citing *Costello*, 864 So.2d at 140). These words are merely defamatory and do not afford the plaintiff any presumption that the elements of falsity, malice, and injury have been met. Ultimately, whether words are defamatory in any sense is a legal question for the court. *Cook v. American Gateway Bank*, 2010-0295 (La. App. 1 Cir. 9/10/10), 49 So.3d 23, 32-33 (citing *Costello*, 846 So.2d at 140). "The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense." *Costello*, 864 So.2d at 140 (citing *Fitzgerald*, 737 So.2d at 716).

Defamatory words must be published, that is, communicated to someone other than the plaintiff. *See Daigle v. Computrac*, 835 F.Supp. 903, 906 (E.D. La. 1993) (citation omitted). This communication must occur with the requisite degree of fault or malice. The First Amendment to the United States Constitution constrains the degree of fault necessary to show malice in some situations, most notably, where the plaintiff is a public figure. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Where, as is the case here, both the plaintiff and defendant are private figures, and the statement is on a matter of public concern, the Louisiana Supreme Court has held that the defendant will be liable if he: (a) knows that the statement is false and that it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them. Actual malice

7

is sufficient but not necessary. *See Kennedy*, 935 So.2d at 681 (citing RESTATEMENT (SECOND) OF TORTS § 580(B)).[4]

### 2.    *Qualified or Conditional Privilege*

Even if a plaintiff states a *prima facie* case of defamation, a defendant may escape liability if the defamatory communication is subject to an absolute or qualified privilege. "The doctrine of privilege rests upon the notion that sometimes, as a matter of public policy, in order to encourage the free communication of views in certain defined instances, one is justified in communicating defamatory remarks to another without incurring liability." *Id*. (citing *Toomer v. Breaux*, 146 So.2d 723, 725 (La. App. 3 Cir. 1962). Louisiana recognizes two types of privileges in this context: absolute and qualified. *Madison v. Bolton*, 234 La. 997, 102 So.2d 433, 439 n.7 (1958). This case involves  the qualified privilege.

The elements of the qualified privilege are "'good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only.'" *Ioppolo v. Rumana*, 581 Fed. App'x. 321, 331-32 (5th Cir. 2014) (citations omitted). In *Smith v. Our Lady of the Lake Hosp., Inc*., 93-2512 (La. 7/5/94), 639 So.2d 730, the Louisiana Supreme Court set forth a two-step process for determining whether the qualified privilege applies to defeat a plaintiff's claim. First, the court must determine, as a matter of law, whether "the attending circumstances of a communication occasion a qualified privilege." *Kennedy*, 935 So.2d at 682 (citing *Smith*, 639 So.2d at 745). The second step asks whether the privilege was

---

[4]A statement relates to a matter of public concern when it "relat[es] to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). The Court has little difficulty concluding that Singletary's speech related to a concern of the community–a pending arson investigation.

abused. *Id*. This second step is normally a fact question for the jury unless the record will allow only one conclusion. *Id*. (citation omitted). But, despite that general pronouncement, Louisiana courts have not been hesitant to grant summary judgment on qualified privilege grounds in practice. *See, e.g., Callahan v. Circuit City Stores, Inc*., 2006-1663, (La. App. 1 Cir. 10/10/07), 971 So.2d 1116, 1120; *Hakim*, 144 So.3d at 1190, 1191; *Kennedy*, 935 So.2d at 689.

In order to show that the privilege was abused, the plaintiff must show that the defendant actually knew the statement was false, or acted in reckless disregard with respect to its mendacity. *Hakim*, 144 So.3d at 1190. Once successfully raised by the defendant, the plaintiff must prove the privilege is inapplicable. *Id*.

In order to show reckless disregard, something more than even gross negligence is required. *Id*. Instead, there must be some evidence that the defendant purposefully avoided the truth. The United States Supreme Court has given guidance with respect to the  meaning of reckless disregard on multiple occasions. Ultimately, a statement is made with reckless disregard when the speaker has a high degree of awareness of the statement's probable falsity. *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967). Reckless disregard requires a plaintiff to "prove that the publication was deliberately falsified, or published despite the publisher's awareness of probable falsity." *Id*. at 153. Indeed, "[t]here must be sufficient evidence to permit the conclusion that the defendant *in fact* entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (emphasis added).

Although the reckless disregard standard is admittedly broad and inexact, precedent has helped flesh out culpable conduct. For example, the failure to conduct an investigation into the veracity of a statement or the identity of the speaker does not rise to the level of reckless disregard

9

and will not defeat summary judgment. *See Kennedy*, 935 So.2d at 689 (citing *Romero v. Thomson Newspapers (Wisconsin), Inc.*, 94-1105 (La. 1/17/95), 648 So.2d 866, 869. "The Court in *Kennedy* explained that conduct constituting reckless disregard is typically found where a story is fabricated by the defendant, is the product of his imagination, or is so inherently improbable that only a reckless man would have communicated it." *Callahan*, 971 So.2d 1119 (citation omitted).

### 3.    *Application to This Case*

Alexander alleges four defamatory statements: 1) "everyone was standing around discussing what had happened"; (2) "all the trails to the office were blocked by emergency vehicles so I had to stop and wait to see what my next step was"; (3) "Ray was talking with someone else at the time [that Singletary arrived on the scene]"; and (4) "he said 'you are going down, too.'" Alexander does not explain how the first three statements could possibly be subject to a defamatory interpretation. As a result, they cannot support a defamation claim, and the Court focuses its attention on Singletary's alleged statement, "he said, 'you are going down, too.'"

Singletary makes two arguments for summary judgment with respect to this statement. First, she argues that the statement "he said 'you are going down, too'" is neither defamatory *per se*, nor defamatory in context. While the Court agrees that the statement is not defamatory *per se*, it finds that, in proper context, it could have a defamatory meaning. Therefore, summary judgment based on this theory is inappropriate. The statement "you are going down,  too" could reasonably imply that Alexander would cause some harm to befall Singletary  in addition to the arson allegedly committed against her employer. Thus, this statement, to a reasonable observer with the understanding that Alexander was already a suspect in the investigation, could reasonably be interpreted as defamatory because it makes it, at least somewhat, more likely that Alexander committed the arson and was

10

threatening further criminal action. Because the statement, read in such a manner, would implicate Alexander in a crime, it would tend to hurt his reputation and estimation in the eyes of the community.

Singletary next argues that, even if the statement is defamatory, its communication was privileged. First, the Court holds that the circumstances of this case occasion a qualified privilege.[5] Singletary commented on a matter related to an ongoing arson investigation, clearly a matter of public import. The statement was communicated to a person–Aycock–with a duty to act on the information if it aided the investigation. Alexander does not protest that conclusion. Instead, he argues that the qualified privilege defense should fail because Singletary made the statement in bad faith. Singletary counters that Alexander has no evidence to support the bad-faith argument, and, because he bears the burden of proof on the matter, summary judgment is inappropriate. The Court agrees with Singletary.

Alexander offers the following from which a jury could infer that Singletary acted in bad faith or with reckless disregard as to the truth or falsity of the statement: (1) at the time of the alleged phone call, Singletary worked for a telecommunications company and, according to Alexander, it must be assumed she had caller ID and would have seen that the call did not come from him; (2)

---

[5] When analyzing whether a qualified privilege applies, Louisiana courts have looked to the Restatement Second of Torts which allows for such a privilege when the circumstances induce a reasonable or correct belief that: (a) there is information that affects a sufficiently important public interest, and (b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true. RESTATEMENT (SECOND) OF TORTS § 598. Applicable to this case, Comment (d) to Section 598 allows for the privilege "when any recognized interest of the public is in danger, including the interest in the prevention of crime and the apprehension of criminals." *See also Kennedy*, 2005-1418 at 18, 935 So.2d at 683 (discussing these provisions when undertaking the qualified privilege analysis).

Alexander characterizes his voice as highly recognizable and claims that Singletary would have recognized it because the two had had multiple work-related phone conversations; and (3) Alexander asserts that Singletary would have conducted some type of investigation or alerted the authorities of her own volition had someone called to threaten her.

The Court initially notes that Alexander does not support these arguments with competent evidence.[6] He attaches no affidavits or deposition testimony to support his assertions;  he relies only on his briefs. Arguments in briefs are not competent summary judgment or special motion to strike evidence. *See Tucker v. SAS Ins. Inc.*, 462 F.Supp.2d 715, 723 (N.D. Tex. 2006) ) ("[B]riefs themselves, like an attorney's opening or closing argument in trial are not evidence."). This principle rings true despite Alexander's *pro se* status.

Putting aside the evidentiary issue, even if these arguments could be reduced to admissible form, this "evidence" speaks more to negligence than reckless disregard.  Alexander charges that the company Singletary worked for had caller ID and she would, or should, have known it was not him calling. This argument cannot defeat summary judgment or the special motion to strike. Although there is record evidence which supports Singletary having caller ID, it does not necessarily follow that she would be aware of the caller's true identity. The caller may have used another person's phone or blocked the call in number. There is also no way of knowing what type of caller ID was at issue. Did it display the name of the caller or merely his number? These questions cannot be answered from the record and make relying on the caller ID argument inappropriately speculative.

---

[6]In opposing the special motion to strike, a plaintiff must come forward with *evidence* demonstrating a likelihood of success on the merits. The statute speaks specifically of relying on the verified pleadings. *See* LA. CODE CIV. P. art. 971(A)(2). In federal court–as opposed to Louisiana state court which requires pleadings be verified by an affidavit–that means Alexander is required to come forth with *evidence* beyond the Complaint.

Second, and relatedly, this testimony sheds no light on Singletary's actual knowledge or lack thereof of the caller's identity.  Nor does it allow the Court or a jury to conclude she had serious beliefs that the caller was not Alexander. Perhaps she *should* have entertained such beliefs.[7] But there is no evidence that she did, in fact, and negligence is not enough to defeat the privilege.

Further, Alexander's guess that Singletary would have conducted some type of investigation had she been threatened is far too speculative to show Singletary knew Alexander was not the caller or entertained serious doubts as to that fact.

Last, Alexander claims that he has a distinctive high-pitched voice that would have been easily recognizable to a person familiar with him, such as Singletary. But the reckless disregard standard operates from the perspective of the defendant. There is no evidence that Singletary considered Alexander's voice to be distinctive. Again, Alexander's arguments all speak to what Alexander believes Singletary should have known according to his own unsupported opinion. There is no evidence as to what she did know, or believed at the time of publication, except for her own testimony in which she claims to have adamantly believed Alexander to be the caller. Because Alexander has failed to show a likelihood of success on the merits, Singletary's Motion for Summary Judgment/ Motion to Strike is GRANTED, and Alexander's defamation claim is DISMISSED WITH PREJUDICE.

## III.    CONCLUSION

For these reasons, Singletary's Motion for Summary Judgment/Motion to Strike is GRANTED, and Alexander's Complaint is DISMISSED WITH PREJUDICE. Alexander's pending

---

[7]Whether Alexander was actually the caller is, of course, a disputed fact. However, for purposes of this motion, the Court assumes he was not the caller.

Motion for Summary Judgment is DENIED AS MOOT.

MONROE, LOUISIANA, this 28th day of July, 2016.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE